404 So.2d 1283 (1981)
Jane LeMay GETER, Plaintiff-Appellee,
v.
Waymon Dale GETER, Defendant-Appellant.
No. 14628.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1981.
*1285 Burnett, Sutton, Walker & Callaway by Glenn E. Walker, Shreveport, for defendant-appellant.
O'Hearn & Brun by Taylor W. O'Hearn, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
The only issue presented by this appeal is whether the trial court abused its discretion in awarding the plaintiff former wife $125 per month permanent alimony. The wife had obtained a separation on the grounds of abandonment and was awarded $250 per month alimony pendente lite in accordance with the agreement of the parties. Several months later the husband obtained a final divorce on the grounds of having lived separate and apart for one year and the wife was awarded $125 per month permanent alimony. The husband appealed from the judgment, contesting only the amount of permanent alimony awarded.
On appeal the husband makes two assignments of error:
(1) The trial court erred in awarding the wife permanent alimony considering her means and the husband's income; and
(2) The trial court erred in failing to consider the wife's earning capacity in determining the amount of alimony due her.
The parties were married in 1975 and lived together for about four and one-half years prior to their separation. The wife has been employed by the Caddo Parish School Board as a school bus driver for about 20 years and, currently, her gross pay is $594.50 per month with take-home pay after pay roll deductions of $433.91 per month. Her expenses were established to be $647.91 per month. Appellant argues that a $120 per month payment the wife is making on a debt incurred to buy some furniture should be excluded from her list of monthly expenses. The argument is without merit because it was necessary for her to buy some furniture after her husband took furniture belonging to him when the parties separated. The note would not be paid off until several months after trial of the alimony matter.
Appellant also argues that the part of plaintiff's gasoline expense attributable to her use of the car to travel to and from college should not be considered, but this argument is also without merit because reasonable transportation cost was recognized by Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973), as a necessary expense to be considered by the trial court in setting the amount of alimony. Plaintiff's basic conservative needs exceed her net income by $214 per month.
Prior to going to work for the school board 20 years ago, plaintiff worked for five years as a bookkeeper-teller for a bank. While working for the school board plaintiff also worked as a grocery store checker for 12 years, making approximately $5 per hour. Since the separation she has been attending Bossier Community College taking key punch, typing, art, and history with the intention of pursing a four-year curriculum for a degree. She has made some effort to find part-time employment but has been unable to do so.
Appellant is a painting contractor who operates through a small, one-man corporation. He testified that his income in 1980 was $493.87 per month before taxes which he estimated would be $200-$300 for the year. His income in 1979 was approximately $23,000, $9,000 from painting houses and about $14,000 from construction of new homes, a venture in which he is no longer engaged. Appellant testified that his income is down substantially because he works primarily on painting newly-constructed homes and the market for such construction has been very poor over the past year.
The trial court found that although appellant was being honest in his estimate of his current income, his income and means were actually greater than the estimate made by him. The evidence concerning appellant's means is meager, but there is substantial evidence supporting the trial court's finding. A profit and loss statement for the corporation covering the *1286 second and third quarters of 1980 shows that appellant drew $2,431.54 as salary or commission and that the corporation had a net profit of $1,531.94, making appellant's total earnings or profit from the corporation for that period $3,963.48, which would average $660.58 per month. Evidence offered by appellant as to his earnings in the first and last quarters of 1980 was incomplete and inconclusive.
There was evidence that appellant had additional income from painting a house or houses which was handled separate from the corporation. There was also evidence that the appellant and his son had some other income related to lots purchased from the proceeds of a sale of property appellant acquired during a previous marriage. It could reasonably be inferred from appellant's testimony that he limited his work to new construction and did not do remodeling and other jobs and from his substantially greater earnings in the previous year that he was not earning to his full capacity since the litigation with his wife commenced. The evidence supports the trial court's finding that appellant had the income, means, and assets to pay the $125 per month alimony award. It should be noted that appellant's expense list of $610.89 per month, exclusive of the alimony he was paying, was very conservative as was the wife's expense list.
The most serious issue in this case is raised by appellant's argument that the trial court failed to take into account plaintiff's earning capacity as required by LSA-C.C. Art. 160[1]. He argues that her work as a school bus driver only takes two hours a day and that she has the capacity to hold other employment, as she did for years prior to and during her marriage. He argues, in effect, that he should not be required to subsidize a four-year college course for his former wife.
The evidence establishes that plaintiff has been employed by the school board as a bus driver for 20 years. She drives the bus between 7:30 and 8:30 and 3:00 and 4:00 each morning and afternoon. Prior to working with the school board she worked as a bank teller for five years. While working for the school board she also worked as a checker in a grocery store for 12 years at a wage of $5 per hour. She worked as a checker for an undisclosed period of time while the parties were married.
Plaintiff testified she would like to find a job and had inquired about work with several friends in various businesses, but there were no openings. Obviously, she is limited to part-time other employment because of her work with the school board. She explained that she is older now than when she worked as a grocery store checker and that checking is tough work. She is trying to better her opportunities for the future by pursuing college courses. At time of trial she was completing her first year of college work. The trial court determined that plaintiff was to be admired for trying to better herself and we agree.
The spouse's earning capacity is a factor to be considered in determining need for purposes of permanent alimony. Here, plaintiff is exercising her earning capacity in a substantial way through her employment with the school board with significant *1287 earnings. However, there are hours available to her during a normal working day for additional part-time employment, which she has pursued in the past for many years, demonstrating her capacity to earn additional income, probably sufficient to meet her basic needs as reflected on her affidavit.
While the earning capacity of a spouse is to be considered in establishing need and the amount of alimony, it does not necessarily follow that the spouse should be required to take immediate employment of any nature immediately following the separation and divorce. Difficulty in finding part-time employment which would fit in with the plaintiff's long-time gainful employment with the school board and which is suitable for her age, training, and ability was a proper consideration. Another proper consideration in evaluating earning capacity, specifically mentioned in Article 160, is further training and education for a reasonable period of time directed toward improving earning capacity.
On the other hand, the alimony article does not contemplate that a spouse should be required, in effect, to subsidize a four-year college curriculum for the other spouse under circumstances such as exist here, where the claimant spouse has a high school education and has worked for many of her adult years in positions within her capabilities and previous training both prior to and during the relatively brief marriage.
We believe that under the facts and circumstances as they existed at the time of trial of this alimony proceeding, the award made by the trial court was within the court's sound discretion and was consistent with the criteria of the code article. We hold, however, that it would be inconsistent with the codal mandate requiring consideration of earning capacity to require defendant to subsidize a four-year college curriculum for plaintiff at this stage of her life, where she has a demonstrated capacity to earn sufficient wages to meet her basic needs. Any future proceedings for modification of the alimony award should take this holding into account. While we have no way of knowing what changes in circumstances may have taken place since this matter was tried some eight months ago, it would seem that by the time this judgment becomes definitive, more than two years after the parties separated and almost a year after the divorce judgment, "the time necessary for the recipient to acquire appropriate education, training, or employment" will have elapsed.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] "Art. 160. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.

"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
"This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries."