483 So.2d 920 (1986)
Beverly HEGRE
v.
Andrew HEGRE.
No. 85-C-2051.
Supreme Court of Louisiana.
February 24, 1986.
*921 Robert Lowe, Terence Hauver, Edith Morris, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiff-applicant.
Dudley Flanders, Bennett Wolff, Flanders & Flanders, New Orleans, for defendant-respondent.
WATSON, Justice.
Plaintiff, Beverly Hegre, was awarded a divorce, permanent monthly alimony of $2,200, income taxes on that sum, plus medical, dental, and automobile expenses. The trial court found that Beverly Hegre was not employable and that Dr. Hegre had been in contempt of certain orders of the court, although no sanction was imposed. The Court of Appeal amended the judgment, ordering that alimony terminate at the end of one year. Hegre v. Hegre, 475 So.2d 18 (La.App. 4th Cir., 1985). A writ was granted to review the judgment of the Court of Appeal. 478 So.2d 896 (La.,1985).

ISSUE
Did the Court of Appeal err in fixing an arbitrary termination date for the trial court's award of permanent alimony?

LAW
Louisiana Civil Code Article 160, which deals with alimony after divorce, was amended and re-enacted by Acts No. 293[1] and 580 of 1982.[2] Both Acts are *922 identical in many respects. Act No. 580 provides for termination of alimony in the case of open concubinage. Act No. 293 refers to "permanent periodic alimony" in Section A and adds a Section B which provides for "lump sum alimony" when "the parties consent thereto".[3] The term "permanent periodic alimony" is obviously used in contrast to "lump sum alimony". Permanent periodic alimony is alimony paid periodically rather than alimony which terminates after a certain period. The Court of Appeal erred in giving Act No. 293 the latter interpretation. Both Acts require consideration of: the spouses' income, means, and assets; liquidity; financial obligations; earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties; and any other circumstances the court deems relevant. Under both statutes, alimony may be revoked if it becomes unnecessary.
Beverly Hegre's petition for separation was filed on June 8, 1982, and the current Acts did not become effective until September 10, 1982. However, the 1979 amendment, Act No. 72, provided almost identical considerations for determining entitlement and amount of alimony after divorce.[4] *923 Only the "lump sum" provision in Act No. 293 and the "open concubinage" provision in Act 580 are new; they do not conflict.
A trial court has much discretion in fixing the amount of alimony. See Gerstner v. Stringer, 205 La. 791, 18 So.2d 195 (1944) where the trial court's judgment was not disturbed. An award of alimony can always be vacated or modified when there is a change in circumstances. Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954); LSA-C.C. art. 160.

FACTS
Beverly Hegre and Andrew M. Hegre were married on December 27, 1958, in Kane City, Illinois. They have two adult children. The parties began living separate and apart in June of 1982. Dr. Hegre was discharged in bankruptcy on January 31, 1983; there is no community property other than furniture.
During the marriage, the parties resided in an uptown New Orleans mansion with a swimming pool and a live-in maid. Dr. Hegre continues to enjoy an affluent lifestyle; his wife's present standard of living is relatively modest.
Dr. Hegre's exact financial position cannot be precisely ascertained from the record, but it is clear that his income and earning capacity are substantial. As a sole practitioner operating the Allergy, Dermatologic Allergy, Immunology, and Internal Medicine Clinic of Greater New Orleans, he grossed $330,364.75 during eleven months of 1983.[5] As of January 24, 1984, he had $68,588.31 in accounts receivable and anticipates collection of perhaps $50,000. Many of his expenses are deducted from his gross receipts, including an automobile expense of $2,500 per month. Dr. Hegre gave his two major children over $20,000 during 1983. His practice is increasing.
Beverly Hegre received her RN in September of 1958, shortly prior to her December marriage at the age of twenty-two. She has a nursing certificate but not a degree. After finishing nurse's training, she worked five or six months for two evenings a week; she was required to quit because she was four months pregnant. Beginning in 1963, she did some other part-time work: in intensive care at Biloxi, Mississippi, for about six months; sporadic work in the kidney transplant department of Lackland Air Force Base Hospital at San Antonio, Texas; and teaching nurses' aids at the Jefferson Davis Junior College in Biloxi. The latter, her last employment, ended in 1969 when her husband was sent to Europe with the military. Beverly Hegre has never done full-time nursing and has not been involved with direct patient care since 1967.
Beverly Hegre was forty-seven years of age in July of 1984 and is now forty-eight. She owns no property.[6] According to her testimony: "I feel I am not emotionally able to go back to nursing. I have been out of it too long."[7] Her father in Illinois is suffering from lung and bone cancer. *924 She has been seeing a psychologist for approximately a year and a half at a cost of $150 per month. Apart from "the low" in her life,[8] she is in good health.
According to the expert testimony of Robert A. Ruello, Assistant Vice-President for Human Resources at Mercy Hospital, there are fewer nursing opportunities now and "... the preference of any hospital would be to have a nurse who has [sic] either a recent graduate or has years of recent experience. The longer the gap from the time the nurse has worked, the lesser the opportunity, but that's not to say that hospitals still wouldn't consider hiring someone that had been out of practice for a number of years."[9] The starting salary in the city is $9.50 to $10.50 an hour. Most hospitals prefer nurses with B.S. degrees. At Mercy Hospital there are about two hundred applications for work as an RN of which fifteen or twenty are considered likely candidates.
Beverly Hegre is not licensed in Louisiana and her 1966 nursing certificate has lapsed; she did not believe that there would be any problem in getting it reinstated and being accredited in Louisiana, which was also Mr. Ruello's opinion.
The expert testimony of Michael Giroir, Director of Personnel at Southern Baptist Hospital, was that absence from the profession for a period of years would not have a significant impact on a nurse's employment opportunities and that Baptist presently has twenty-five vacancies. The salary range is $10.08 to $15.35 per hour, and there is an orientation program. Some registered nurses who have been away for as short a period as five years have difficulty in returning to practice. The positions currently available at Baptist are the shifts from 11:00 P.M. to 7:00 A.M. in the less attractive units of the hospital. Giroir admitted that someone in Ms. Hegre's position would have a very low priority in the hiring process.

CONCLUSION
The Court of Appeal ignored the trial court's conclusion that Beverly Hegre is not employable, stating: "the wife is a healthy 47-year-old woman clearly capable of providing for her needs by working."[10] Thus, the Court of Appeal's factual finding is directly contrary to that of the trial court and changes the parties' burden of proof. Under the trial court's judgment, the husband would be required to prove that the wife was no longer in need of alimony, whereas, under the Court of Appeal's judgment, the wife would be required to prove that she was still in need of alimony at the end of an arbitrary one year period. This shift in the burden of proof has not been adopted by the Louisiana Legislature. See Sphat, Persons, 41 La.L.Rev. 372, 376-377 (1981).
Beverly Hegre is free from fault, has minimum assets, and needs support. The expert witnesses testified that her opportunities for employment as a nurse are, at best, limited. According to her testimony, she is emotionally unable to practice her profession and sees a psychologist for counseling. The trial court's conclusion that Mrs. Hegre is not employable is supported by the evidence and is certainly not an abuse of discretion. The trial court heard the witnesses and accepted Beverly Hegre's testimony that she is unable to work.
There is no basis to support the arbitrary one year cut-off period for receipt of alimony adopted by the Court of Appeal. Nothing indicates that a one year period would allow Beverly Hegre to obtain "appropriate education, training or employment." [11] Her employment opportunities will not be enhanced at the end of one year. On the contrary, her employment potential decreases with every passing year. After finding that Beverly Hegre could work and support herself, the Court of Appeal allowed *925 one year's alimony, a contradictory result unless a lump sum award was intended.[12]
Dr. Hegre's income should increase in the future as his practice becomes better established. While his support for his major children is commendable, it does not lessen his obligation to support their mother and his wife of twenty-four years until she can work and is no longer in necessitous circumstances.
The record does not establish that the amount awarded deters Beverly Hegre from seeking work. Her alimony income is adequate but does not allow the luxuries to which she was formerly accustomed. There is no evidence that the amount awarded here is an abuse of discretion, considering all the circumstances.[13]
In the event that Beverly Hegre becomes employable, her husband is free to come into court and prove that fact because an alimony award can be terminated whenever it is no longer necessary and is always subject to change or modification.
The Court of Appeal erred in its interpretation of Act 293 and erred in making a factual substitution of its judgment for that of the trial court.

DECREE
For the foregoing reasons, the judgment of the Court of Appeal is reversed and the judgment of the trial court is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
LEMMON, J., concurs, agreeing that the appellate court's limitation of the period of alimony was inappropriate under the circumstances of this case. In any event, the passage of a substantial period of time in which the claimant spouse does not utilize present earning capacity constitutes a change in circumstances to be considered in any future rule to decrease or terminate alimony.
NOTES
[1] Text of LSA-C.C. art. 160 as amended by Acts 1982, No. 293, § 1:

"A. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse.
"In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties and their obligations to support or care for dependent children; and any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
"Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries.
"B. The court may award alimony in lump sum in lieu of or in combination with permanent periodic alimony when circumstances require it or make it advisable, and the parties consent thereto. In determining whether to award lump sum alimony, the court shall consider the needs of the claimant spouse and the financial condition of the paying spouse. In awarding lump sum alimony in lieu of or in combination with permanent periodic alimony, the court shall consider the criteria enumerated in paragraph A of this Article, except the limitation to one-third of the paying spouse's income, in determining entitlement and amount of alimony.
"A lump sum award may consist of immovable or movable property or may be a monetary award payable in one payment or in installments.
"A judgment which awards lump sum alimony shall vest in the claimant spouse a right which is neither terminable upon either spouse's remarriage or death, nor subject to modification. * * *"
[2] Text of LSA-C.C. art. 160, as amended by Acts 1982, No. 580, § 1:

"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
"This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage. * * *"
[3] See Hilton v. Hilton, 451 So.2d 90 (La.App. 3 Cir., 1984).
[4] LSA-C.C. art. 160, as amended by Act No. 72 of 1979, provided in pertinent part:

"Art. 160. Alimony after divorce
"Art. 160. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
"This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries. * *"
[5] After his January 31, 1983, bankruptcy, Dr. Hegre commenced operating a sole practice in February of 1983.
[6] In the summer of 1982, Beverly Hegre received a small inheritance of $29,500 from an aunt and used $18,500 of that amount to pay her attorneys and her living expenses prior to receiving alimony pendente lite. Approximately $11,000 is left in trust.
[7] Vol. IV, p. 197. The statement quoted by the Court of Appeal: "Well, I feel I shouldn't have to work." (Vol. IV, p. 198), must be considered in the context of her prior statement.
[8] Vol. IV, p. 206.
[9] Vol. III, p. 148.
[10] 475 So.2d at 20.
[11] LSA-C.C. art. 160.
[12] A lump sum award would, of course, require Beverly Hegre's consent.
[13] The Court of Appeal agreed that the amount awarded was not an abuse of discretion.