493 So.2d 1165 (1986)
Mrs. Patricia Church wife of Jay Butler TEASDEL
v.
Jay Butler TEASDEL.
No. 86-C-0568.
Supreme Court of Louisiana.
September 8, 1986.
On Application for Rehearing November 6, 1986.
A.D. Freeman, Jr., Satterlee, Mestayer & Freeman, New Orleans, for applicant.
Charles E. Hamilton, III, Karen Milner, New Orleans, for respondent.
WATSON, Justice.
In this rule for permanent alimony filed by Patricia Church, the former wife of defendant, *1166 Jay Butler Teasdel, the trial court denied alimony on the ground that Patricia Church was capable of working and had not made a reasonable effort to find employment during a year of "rehabilitative alimony".[1] The court of appeal affirmed,[2] and a writ was granted to review the judgment.[3]

LAW
Alimony after divorce is governed by LSA-C.C. art. 160 in the two versions adopted by the Legislature in 1982.[4] See Hegre v. Hegre, 483 So.2d 920 (La., 1986). Permanent alimony is a pension which terminates when it becomes "unnecessary".

ISSUE
Since Mr. Teasdel stipulated that he could pay any amount of alimony which the court saw fit to award, the only question is whether the lower courts erred in finding alimony unnecessary for Patricia Church because of: (1) her earning capacity; (2) *1167 the possibility of support from the estate of her father; and (3) her ownership of a home.

FACTS
There were arguments on matters outside the record by counsel for both parties, but the facts in evidence are relatively simple. The parties were divorced in 1970 and have three children in their late twenties. Patricia Church's living expenses total approximately $1,500 per month.[5]
At the time of the rule hearing on October 10, 1984, Patricia Church Teasdel was fifty-four years of age. She has no job skills: she cannot type, take shorthand, run a computer, or operate a cash register. She graduated from the University of Iowa in 1953 with a major in sociology and a minor in English Literature. She has never been employed except during her college years when she was a "Christmas shopper" [6] for a department store.
She reviews the classified advertisements every week and calls with reference to anything for which she might be suitable. In most cases, her lack of experience brings an immediate rejection, but she has been to nine job interviews. She has sought employment in person at Maison Blanche, Godchaux's, and Gus Mayer's department stores; the Inside Gallery, a jewelry store; the Top Drawer; Russell's Cleaners; Long Vue Gardens' Gift Shop; and The Way Down Yonder fair. Although she feels capable of being a sales person in a department store and has not been told she is unemployable, she has not been offered a job. Her lack of job experience, secretarial skills, and transportation impair her efforts to seek employment.
Patricia Church testified that she has nerve damage to her face because of operations in March and November of 1983. During the second surgery, both her jaws were broken and she was incapacitated for three months. She has continual pain and partial paralysis on the left side of her face, which affects her ability to eat, smile, or talk for any length of time. She still owes hospital bills for her surgery. At a party, a woman brushed her hand across Patricia Church's chin to wipe away some saliva. This caused acute embarrassment; Patricia Church was unaware of the fact that she was drooling.
Patricia Church has a house note of $434 a month. After becoming four months delinquent, she borrowed $2,500 from her mother for which she gave a promissory note with twelve percent interest. She also borrowed $500 from the Hibernia Bank and obtained $350 by surrendering a $10,000 life insurance policy on Teasdel which she received in the divorce settlement. She has also received loans from friends. One son lived with her for ten months in 1983 and gave her $400 a month rent. This will be her third year without any heat in her home, and her last two dress purchases were eight years ago.
According to the testimony of a friend, Patricia Church could not function for four months after her surgery. She still has difficulty in eating and conducting long conversations; she has acquired a nervous habit of brushing her chin. This witness confirmed that there was no heat in Patricia's house during the winter of 1983-1984. As a friend of thirty years, she took her to the hospital, bought her prescriptions, and has given her used clothing, money to go to her father's funeral, and some basic groceries.
Patricia Ann Knight, a vocational evaluator and rehabilitation consultant, testified from court observation and a deposition that Patricia Church was employable at an entry level wage.[7] She might be able to work in the civil service field and could enhance her employment possibilities by obtaining secretarial skills. This witness admitted that during her past experience as a personnel director she had never hired anyone fifty-four years old with no previous experience to do clerical work and did not know of anyone who had.
The will of Harold B. Church provides for the net income from his estate to be paid to his wife. The will also allows the trustees to pay sums to his children "as my Trustees, other than Dorothy R. Church, in their sole discretion deem necessary or advisable." According to a letter received by Patricia Church from Allan A. Herrick, the designated attorney for the estate, in Des Moines, Iowa: "Your father had all of his property in joint tenancy with his wife, Dorothy R. Church, and nothing passed under his Will. Enclosed is a copy of the Inheritance Tax Return to the State of Iowa[8] which shows that Dorothy was the *1168 sole beneficiary of his estate.[9] *** nothing would pass to you under the Will until after your mother is deceased."[10]
On November 19, 1970, Patricia Church mortgaged her home to the Dryades Savings & Loan Association for $44,000. In the community property settlement, Teasdel agreed to make payments on a mortgage note, maintain insurance coverage, and pay the property taxes, the amount being limited to eighty percent of a $40,000 purchase price.[11] His share of the house obligation had been fixed at $300 per month.[12]

CONCLUSION
There is no question that permanent alimony is a pension which is designed to prevent a former spouse from becoming a public charge. Despite the testimony that she has some minimal earning capacity, her age, health, lack of job experience and training make it unlikely that Patricia Church would have a favored position in the job market. She has made a good faith effort to find employment, and it is obvious that she would not be existing on borrowed money and the charity of friends if she were in fact able to find a job.
The lower courts were manifestly erroneous in finding that Patricia Church has an "earning capability" or "earning capacity" which makes alimony for her unnecessary. Despite speculation about her employment potential, there is no evidence that any job is available in metropolitan New Orleans for Patricia Church. There is no proof that alimony for her is unnecessary. On the contrary, the evidence is that she has suffered privation for lack of support.
As to the possibility of support from the estate of her father, Patricia Church has no claim on her father's estate until after the death of her mother.
As to her home, the value of which is unknown, the court of appeal stated that it is "in a desirable section of old Metairie which could provide a substantial source of income if she chose to sell it to defray educational or living expenses."[13] Quite apart from any alimony obligation, defendant has a contractual obligation to pay $300 a month toward his wife's house note. Even if Mr. Teasdel had not entered into this contractual obligation, it is well established that a spouse need not sell his or her home to be eligible for alimony.
In 1970 Patricia Church was awarded alimony of $200 per month, plus $300 a month for her house note. It is clear that she is still in need. Since $500 is not sufficient to pay her house note and utility bills, it is inadequate for her support. Her itemized expenses are reasonable.[14] Since Ms. Church has expenses of about $1,500 per month, an award of $1,000 per month will not deter her from seeking employment, but will cover her basic needs.
Patricia Church is entitled to an award for attorney's fees. LSA-R.S. 9:305. This *1169 matter has been vigorously pursued through a one day trial, the Court of Appeal, and the Supreme Court. The record considered, a fee of $3,000 is appropriate.
For the foregoing reasons, the judgment of the court of appeal is reversed and:
IT IS ORDERED, ADJUDGED, AND DECREED that defendant, Jay Butler Teasdel, pay alimony of $1,000 per month to Patricia Church Teasdel, retroactive to the filing of this rule on July 18, 1984, and payable on the 18th day of each month hereafter.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jay Butler Teasdel pay Patricia Church Teasdel's attorney's fees in the amount of $3,000. All costs are taxed against Jay Butler Teasdel.
REVERSED AND RENDERED.
LEMMON, J., concurs.

 APPENDIX
 AVERAGE MONTHLY EXPENSES OF
 PATRICIA CHURCH TEASDEL
Automobile gas & oil $ 50.00
Automobile repair 50.00
Clothing 50.00
Dry Cleaners & Laundry 10.00
Entertainment 60.00
Food 150.00
Health Expenses:
 Doctor 10.00
 Dentist 133.00
 Eye Glasses 7.00
 Medicines 15.00
Household Expenses:
 Mortgage payment 440.00
 House repair 84.00
Hibernia Bank 20.00
Insurance:
 Automobile liability 38.00
Donations 6.00
Drug store & household items 42.00
Sundries:
 Newspapers & magazines 5.00
 Cosmetics 10.00
 Gifts 20.00
Utilities:
 Electricity & Gas 200.00
 Kentwood water 8.00
 Water 8.00
 Telephone 38.00
 _________
 TOTAL $1,454.00
(Exhibit P-4)

PER CURIAM
In Teasdel v. Teasdel, 493 So.2d 1165 (La.1986), we reversed the court of appeal and ordered the defendant, Jay Butler Teasdel to pay permanent alimony of $1,000 per month to Patricia Church Teasdel, retroactive to the filing of this rule on July 18, 1984, and payable on the 18th day of each month hereafter. La. R.S. 9:310.
We also ordered Mr. Teasdel to pay Mrs. Teasdel's attorney's fees as provided for in La.R.S. 9:305 and taxed all costs to Mr. Teasdel.
Timely application for rehearing was filed by defendant on September 22, 1986. On reconsideration we have determined that attorney's fees should not have been awarded.
La.R.S. 9:305 provides:

When the court renders judgment in an action to make past due alimony or child support executory, or in an action to enforce child visitation rights, except for good cause, the court shall award attorney fees and costs to the prevailing party. (Emphasis added.)
This statute is only applicable to actions for past due alimony or child support. Its purpose is to insure that the recipient of a judgment for past due alimony will receive the full amount of the alimony owed without reduction from the payment of attorney's fees.
In the present case, Mrs. Teasdel filed a rule for permanent alimony after a previous judgment requiring Mr. Teasdel to pay rehabilitory alimony had expired. This rule was dismissed by the trial court. The court of appeal affirmed in Teasdel v. Teasdel, 482 So.2d 677 (La.App. 4th Cir.1985).
At no time in this proceeding was any claim made by Mrs. Teasdel for past due alimony. Accordingly, attorney's fees should not have been awarded under La. R.S. 9:305.
For the foregoing reasons we vacate that part of our prior judgment ordering Jay Butler Teasdel to pay Patricia Church Teasdel's attorney's fees in the amount of $3,000.
In all other respects our original judgment is maintained.
NOTES
[1] There is no specific provision in Louisiana law for rehabilitative alimony, but see 41 La.L.Rev. 372 at 376.
[2] Teasdel v. Teasdel, 482 So.2d 677 (La.App. 4 Cir.1985).
[3] 487 So.2d 433 (La., 1986).
[4] Text of LSA-C.C. art. 160 as amended by Acts 1982, No. 293, § 1:

"A. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse.
"In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties and their obligations to support or care for dependent children; and any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
"Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries.
"B. The court may award alimony in lump sum in lieu of or in combination with permanent periodic alimony when circumstances require it or make it advisable, and the parties consent thereto. In determining whether to award lump sum alimony, the court shall consider the needs of the claimant spouse and the financial condition of the paying spouse. In awarding lump sum alimony in lieu of or in combination with permanent periodic alimony, the court shall consider the criteria enumerated in paragraph A of this Article, except the limitation to one-third of the paying spouse's income, in determining entitlement and amount of alimony.
"A lump sum award may consist of immovable or movable property or may be a monetary award payable in one payment or in installments.
"A judgment which awards lump sum alimony shall vest in the claimant spouse a right which is neither terminable upon either spouse's remarriage or death, nor subject to modification. * * *"
Text of LSA-C.C. art. 160, as amended by Acts 1982, No. 580, § 1:
"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
"This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage. * * *"
[5] See Exhibit P-4 attached as an Appendix.
[6] Tr. 31.
[7] Between the minimum wage and $5.00 per hour.
[8] Exhibit D-2.
[9] Exhibit D-2 shows that all the property of Harold B. Church was jointly owned with his spouse. "`[O]n the death of a joint tenant the survivor or survivors take the whole estate, free from claims of the heirs or creditors of the deceased contenant.' * * *" Rembe v. Stewart, 387 N.W.2d 313 (Iowa, 1986).
[10] Exhibit P-3.
[11] "As further consideration for this settlement, Jay Butler Teasdel agrees to purchase a house to be selected by Patricia Church Teasdel. Said house to be located within the Parishes of Jefferson or Orleans, State of Louisiana, and will be purchased in the name of Patricia Church Teasdel. The obligation of Jay Butler Teasdel hereunder is limited to the amount of Forty Thousand and No/100 ($40,000.00) Dollars of which amount seventy (70) to eighty (80) percent will be financed at current interest rates and it is agreed that said property so selected is to be acceptable to conventional lenders. Payments on the mortgage note (not to exceed 25 years) so financed will be made by Jay Butler Teasdel unless and until said property shall be sold by Patricia Church Teasdel; in which event the balance due under the mortgage shall be liquidated from the proceeds of the Sale, thereby discharging any further payment obligations of Jay Butler Teasdel on the mortgage, and the equity realized thereby shall be paid to Patricia Church Teasdel. He further agrees to pay and maintain insurance coverage on said house as required by mortgage holder and property taxes on said house, both such amounts being limited to the Forty Thousand and No/100 ($40,000.00) Dollars portion of any cost of house thereof. Mrs. Teasdel has the right to select and purchase the house anytime after date up to one (1) year from date hereof. [May 29, 1970]." (Exhibit A)
[12] "[H]e has paid $300 per month toward the obligation on the house he purchased for plaintiff as part of their community property settlement. * * *" Teasdel v. Teasdel, 454 So.2d 886 at 889 (La.App. 4 Cir.1984).
[13] 482 So.2d at 679.
[14] Some of them have changed. She no longer operates a car, but inflation, medical bills, and debts more than offset this economy.