DOUCET, Judge.
The defendant, Patricia H. Hackett, appeals from that portion of a trial court judgment awarding “rehabilitative” alimony in the amount of $850.00 per month for 90 days; thereafter in the amount of $500.00 per month for a period of 90 days, after which the alimony was to be terminated.
The plaintiff, Charles S. Hackett, and the defendant, Patricia H. Hackett, were married in 1962. No children were born of the marriage.
A judgment of separation was rendered on September 11, 1989. The plaintiff paid alimony in the amount of $850.00 per month. In his petition for divorce, Mr. Hackett sought to have this amount reduced, alleging that he had suffered a reduction in income.
On January 16, 1990, Mr. Hackett filed suit for divorce based on the parties having lived separate and apart for a period of one year. Mrs. Hackett reconvened seeking post-divorce alimony and to have Mr. Hack-ett retain hospitalization insurance on her.
On March 19, 1990, a trial was held in the divorce action. The court also considered the defendant’s claim for alimony. It was not alleged that she was at fault in causing the breakup of the marriage. Mrs. *1283 Hackett alleged that she was in need of post-divorce alimony. At the time of trial, Mrs. Hackett was 55 years old. While Mrs. Hackett was a qualified LPN, she had not worked as such since the marriage. Since that time she had participated extensively in volunteer work. She had also worked for a day at McNeese State University in the bookstore, and for about 4 days for the Calcasieu Parish School Board monitoring test taking. Additionally, from about May 1, 1988 until the separation, Mrs. Hackett worked as a cashier at Hackett’s Cajun Kitchen, a family owned business. She was not paid for this, but she and her husband took money from the business for their expenses.
The record also reveals a history of health problems on the part of Mrs. Hack-ett. In 1983, she was operated on for an abcess. At that time, her left kidney was removed. Afterwards, she was treated for residual pain. This treatment culminated in a surgical procedure involving blocking nerves in order to relieve pain. The pain apparently recurred. At the trial, Mrs. Hackett’s treating physician, Dr. David Bu-tross, Jr., testified that she was still taking pain medication. He seemed to feel, however, that she should cut back or terminate its use. He stated that she was also being treated for diabetes, which was under control at the time of trial, and for high blood pressure. She had previously been treated for depression and was still taking medication for that. He gave it as his opinion that she was physically able to undertake non-strenuous gainful employment on at least a part-time basis but that, as of the time of trial, she was not emotionally ready to do so.
At the conclusion of the trial, the court rendered judgment in favor of Mr. Hackett granting a divorce. No finding was made with regard to the fault of either party. Mrs. Hackett was awarded rehabilitative alimony in the amount of $850.00 per month for 90 days, then to be reduced to $500 per month for 90 additional days, at the end of which it would terminate. Mr. Hackett was further ordered to maintain hospitalization for a period of six months.
Mrs. Hackett appeals, arguing that the trial court erred in ordering “rehabilitative” alimony to be paid for a limited term; in limiting the term for which plaintiff was to maintain hospitalization on her; and in not allowing her to question the plaintiff as to his future plans for matrimony.
ALIMONY
This case is governed by former La.C.C. art. 160[1], which states that:
“A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse.
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse’s earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the *1284 court shall consider his or her earning capability, in light of all other circumstances.
(4) Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage.
B. (1) The court may award alimony in lump sum in lieu of or in combination with permanent periodic alimony when circumstances require it or make it advisable, and the parties consent thereto. In determining whether to award lump sum alimony, the court shall consider the needs of the claimant spouse and the financial condition of the paying spouse. In awarding lump sum alimony in lieu of or in combination with permanent periodic alimony, the court shall consider the criteria enumerated in Paragraph A of this Article, except the limitation to one-third of the paying spouse’s income, in determining entitlement and amount of alimony.
(2) A lump sum award may consist of immovable or movable property or may be a monetary award payable in one payment or in installments.
(3) A judgment which awards lump sum alimony shall vest in the claimant spouse a right which is neither terminable upon either spouse’s remarriage or death, nor subject to modification.”
Under this article, a spouse seeking alimony must, as a threshold requirement, show that he or she is free from fault in the divorce. The judgment of divorce makes no finding on this point. No evidence was adduced with regard to Mrs. Hackett’s fault or freedom therefrom. However, the judgment of separation rendered September 11, 1989, states that “PATRICIA HARTMAN HACKETT is found to be free from fault in this separation.”
This court in Guillory v. Guillory, 490 So.2d 758, 760-761 (La.App. 3rd Cir.1986) cited the La. Supreme Court’s decision in Fulmer v. Fulmer, 301 So.2d 622 (La.1974) as follows:
“... A judgment of separation in favor of the wife is a judicial determination of the marital fault which caused the judicial separation. As to the pre-separation fault, it should constitute a conclusive determination which equally bars re-litigation of the issue of fault, when alimony is sought under Article 160, whether the divorce is based either on La.R.S. 9:301 or on 9:302. It should equally bar the husband or the wife from re-litigating such issue.
“Thus, where a judicial separation is decreed as caused by the fault of one spouse or the other, such fault as judicially determined to be the cause of the separation is normally determinative of the issue of whether the husband or the wife is or is not at fault, for purposes of deciding whether the wife is entitled to alimony under Article 160.”
Accordingly, the finding in the separation proceeding that Mrs. Hackett was free from fault is determinative of her freedom from fault for post-divorce alimony.
Once having determined that the party seeking alimony is free from fault, the court may then turn to the consideration of entitlement to and amount of alimony, using the factors enumerated in La.C.C. art. 160(A)(2):
“As can be seen from this provision, one factor to be considered in determining entitlement to an amount of alimony after divorce is the time necessary for the recipient to acquire appropriate education, training, or employment. LSA-C.C. Art. 160(2)(e). This is a valid consideration and a former spouse may not have an unlimited time to seek training and employment. Geter v. Geter, 404 So.2d 1283 (La.App. 2d Cir.1981); Johnson v. Johnson, 442 So.2d 901 (La.App. 3rd Cir.1983), writ denied 445 So.2d 451 (La.1984).”
Martin v. Martin, 573 So.2d 620 (La.App. 2nd Cir.1991). There is however, no specific provision for rehabilitative alimony. Martin, supra, citing Teasdel v. Teasdel, *1285 493 So.2d 1165 (La.1986). Further, the Supreme Court in Hegre v. Hegre, 483 So.2d 920 (La.1986) disapproved the imposition of a time limit for an award of post-divorce alimony, based on the difference between permanent periodic alimony and lump sum alimony as outlined in La.C.C. art. 160. The Court stated at page 922 that:
“The term ‘permanent periodic alimony’ is obviously used in contrast to ‘lump sum alimony’. Permanent periodic alimony is alimony paid periodically rather than alimony which terminates after a certain period.”
In Martin, supra, the court noted at page 623, that:
“In 1980, the legislature specifically considered the issue of time limits on alimony and rejected the idea of incorporating such a scheme into our law. La. S.B. 806 6th Reg.Sess. (1980). Also, as noted in Hegre v. Hegre, supra, imposing such a time limitation causes an impermissible shift in the burden of proof from the paying spouse to the recipient spouse, requiring the latter to establish the need for continuing alimony payments.”
Based on the lack of statutory authority for imposing time limits on permanent post-divorce alimony, and in light of the Louisiana Supreme Court’s decisions disapproving such time limitations, we must reverse the trial court judgment imposing a limit in this case.
Additionally, we find no factual support for such a limit, considering Mrs. Hackett’s health, age, and the long hiatus in her work history. Further, there was no showing that there is work available for which her physical limitations suit her. If circumstances change, Mr. Hackett may, of course, seek a termination or reduction of permanent periodic alimony. At that time, the court may again consider whether Mrs. Hackett has had sufficient time to acquire “education, training, or employment.” Martin, supra.
HOSPITALIZATION
We find no authority, jurisprudential or statutory, which specifically governs the trial court’s authority to order a spouse to maintain hospitalization on the other spouse. However, the peculiar circumstances of this case indicate that, in this case, the award of hospitalization was intended to be a part of the alimony award. This conclusion is based on the facts revealed at trial.
Like the award of alimony, the award of hospitalization was limited to six months. Mrs. Hackett is in poor health and her means are not sufficient to meet her need for health care. Mrs. Hackett’s poor health and unemployed status make it difficult and expensive for her to obtain insurance. Additionally, it is far less financially burdensome for her to be maintained on an existing plan of hospitalization than to order additional cash payments to cover her health care costs.
As a part of the permanent periodic alimony award, it may not be limited in term, as has been discussed above. However, should circumstances change, the parties may move the court to change this award.
MATRIMONIAL QUESTIONS
The trial judge sustained the plaintiff’s objection to questions about his future matrimonial plans. Mrs. Hackett now argues that the questions should have been allowed because the answers were relevant to Mr. Hackett’s financial obligations and therefore, would indicate his ability to pay alimony.
We find no error in the trial court’s ruling. The possibility that Mr. Hackett might marry again is not relevant to his ability to pay alimony at the time of the hearing. If he were to remarry any change this makes in his financial circumstances could be brought before the court at that time.
For the foregoing reasons, the judgment of the trial court is amended, affirmed as amended, and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of petitioner, CHARLES S. HACK- *1286 ETT, and against the defendant, PATRICIA H. HACKETT, decreeing a divorce a vinculo matrimonii between them, and dissolving forever the bonds of matrimony heretofore existing between them.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CHARLES S. HACKETT pay alimony to PATRICIA H. HACKETT in the sum of $850.00 per month.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CHARLES S. HACKETT maintain hospitalization insurance for PATRICIA H. HACKETT.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CHARLES S. HACKETT be assessed with all court costs.
This judgment is made retroactive to the date of the rendition of the judgment of divorce by the trial court.
Costs of this appeal are to be paid by the plaintiff, Charles S. Hackett.
AFFIRMED AS AMENDED.

. La.C.C. art. 160 was redesignated as La.C.C. art. 112 effective January 1, 1991.