[1] On June 2, 1983 the district court rendered judgment dismissing the plaintiff's rule for an increase in alimony and for contempt. The court made absolute the defendant's rule to eliminate alimony and ordered the defendant to pay the plaintiff five hundred dollars ($500) per month alimony for a period of one year. The plaintiff appeals this judgment and we affirm.
[2] The sole issue presented for review is whether the trial judge abused his discretion in terminating the plaintiff's alimony.
[3] The plaintiff contends that her needs cannot be met by the trial court's award. She further alleges that her former husband's testimony was not credible and thus findings based upon this testimony were in error.
[4] Awards of alimony after divorce are controlled by Civil Code Article 160, which provides in pertinent part:
[5] When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income.
[6] * * * * * *
[7] In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations *West Page 888 
of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
[8] In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances. (Emphasis Supplied)
[9] * * * * * *
[10] Therefore, in order for a spouse to be entitled to alimony after divorce, that spouse must manifest a showing of hisneed and also, the means of the other spouse. Greenv. Green, 432 So.2d 959 (La.App., 4th Cir., 1983). A spouse who seeks a modification of an alimony award must show a change in the circumstances of one of the parties from the time alimony was fixed. Green v. Green, supra.
[11] In his reasons for judgment, the trial judge found that there had been a change in circumstances on the part of each of the parties. He also concluded that the plaintiff had not satisfied her burden of proof concerning her needs because she possessed earning capacity but she refused to avail herself of her ability to provide for her needs by working. The trial judge thus reasoned as follows:
[12] Mr. Teasdel accused Mrs. Teasdel of living in open concubinage with "John" and of taking the position that as long as she did not marry John she could [not] still live with him and get her pension from Mr. Teasdel. The relationship has lasted for several years. Mrs. Teasdel has accompanied this man out of town on vacation and business trips, has admittedly slept with him here in New Orleans, and on the trips, etc. However, this can best be characterized as a longstanding affair.
[13] * * * * * *
[14] Mrs. Patricia Teasdel, petitioner, owns a house in a very desirable section of Old Metairie which has substantial value, . . .
[15] * * * * * *
[16] Mrs. Teasdel is 52 years old and college educated. Her children are grown and are now between the ages of 24 and 27. All of her children have finished their formal education.
[17] Since the 1970 judgment, her situation has changed in that her children are grown and she is no longer required to be around the house. She presented no evidence of any physical or mental inability to work, although she may have to have surgery on her jaw to repair a fracture which she sustained in an accident a few weeks ago. She is obviously a woman with more than the usual complement of social graces and is a person capable of holding her own in social relations with anyone. This is clear from her long-standing relationship with a prominent local attorney and is also clear from the manner in which she handled herself at trial.
[18] She has, however, steadfastly declined to seek employment to supplement or replace the alimony which defendant has paid to her over the last fifteen years. Although there was no testimony as to how her expenses may have changed over the years, it is probably safe to assume that her expenses have increased along with inflation. She has no substantial liquid assets of any kind. She has been content to live in a grand style over the years without a worry in the world because of her former husband's amiable disposition and generosity towards her and their children, even after their maturity.
[19] Mr. Teasdel has about $500,000 in liquid assets, stock in a wholly owned corporation (which conducts very little business at this time and which is valued at about $48,000) which produces no income, together with a house in which he and his second wife live, and a sailboat on which he and his second wife take their vacations. *West Page 889 
[20] At present his assets produce an income at the rate of about $25,000 to $30,000 per year.
[21] * * * * * *
[22] He is currently unemployed after fifteen years in the marine industry.
[23] * * * * * *
[24] This man has for years on end given far, far more than his fair share toward the support of his former wife. Every request made of him for money, automobiles, medical treatment, etc. has been granted. Not only is this true for his former wife, but it is also true for the three major children long after they became majors.
[25] Far from being an irresponsible, wealthy playboy, this man has done more, much more, for his wife (who has done absolutely nothing for herself for the past 15 years) and his children than could reasonably be expected of him.
[26] Since the 1970 judgment, then, Mr. Teasdel's situation has changed in the following respects. Although there is no concrete testimony in the record, the Court may expect that his expenses have increased, as have Mrs. Teasdel's, approximately in accord with inflation generally. Additionally, his occupational income is entirely gone and he is not employed at this time, but his investment income has taken up much of the loss. His children have grown up, but, in the last couple of years he has sustained the expense of supporting his major daughter who, by reason of an unfortunate trauma inflicted upon her, has been unable to support herself. Additionally, within the last five years Mr. Teasdel has remarried.
[27] Finally, Mr. Teasdel's income could be expected to approximate $2,000 to $2,500 per month over the next year. Under the clear standard delineated in Article 160 of the Civil Code, Mr. Teasdel cannot be held responsible for more than one-third of that income.
[28] Article 160 of the Civil Code requires this Court to take into account the earning capacity of Mrs. Teasdel. There is no doubt that Mrs. Teasdel has some earning capacity, although she has never
sought employment and has testified candidly that she would not seek employment unless she were required to. Mrs. Teasdel is required to seek employment. This man has paid this woman voluntarily 49% of his income over the last 15 years!!!
[29] * * * * * *
[30] Mr. Teasdel has provided generously for the support of Mrs. Teasdel for a period which is now longer than the time that they lived happily together. It has continued for a period approximately six to eight years beyond the majority of their children and it is time for that obligation to cease.
[31] * * * * * *
[32] Mrs. Teasdel will not seek employment unless and until told she must. She is now being told to do just that, to utilize her earning capacity. The Court will not order an abrupt stoppage of alimony and will give her time in which to become acclimated, to adjust during the transition period. One more year should be ample time for her to do that which she should have been trying to do for years. For the next year Mr. Teasdel is to pay her $500.00 per month, and after that his obligation ceases.
[33] * * * * * *
[34] Our review of this case satisfies us that the findings of the trial court and the conclusions drawn therefrom are clearly supported by the record.
[35] Mr. Teasdel, by his estimates, has provided his former wife with in excess of $248,000 over the fifteen (15) years following their divorce. He has provided her $200 per month alimony, $600 per month child support and he has paid $300 per month toward the obligation on the house he purchased for plaintiff as part of their community property settlement. He continued to make the child support payments long after the maturity of his three children. In addition to making the down payment and *West Page 890 
monthly payments on his former wife's house, Mr. Teasdel had offered to pay in full the remaining balance on the mortgage note on the house. He has also given his former wife two cars, provided for her hospitalization and given her additional money upon request.
[36] Mrs. Teasdel does not dispute the fact that Mr. Teasdel has provided for her in this manner. She also admits that Mr. Teasdel has provided financially for their three major children. Moreover, Mrs. Teasdel is college educated, holding a degree in sociology from the University of Iowa. She is not physically disabled nor does she possess any impediment which would preclude her from working. She is in her early 50's and, although she has no particularized training, the lower court afforded her a year of alimony payments, in order that she could secure proper training.
[37] In the area of domestic relations, much discretion is vested in the trial judge and particularly when he evaluates the weight of the evidence which is resolved primarily on the basis of the credibility of the witnesses. Pearce v. Pearce,348 So.2d 75 (La. 1977). The factual findings of the trial court are therefore to be accorded very substantial weight on review.Pearce v. Pearce, id. We will not disturb those findings, upon review, unless they are clearly wrong. Flammv. Flamm, 442 So.2d 1271 (La.App., 4th Cir., 1983).
[38] In this case the findings of the trial judge are not clearly wrong. To the contrary, the findings are fully supported by the record. The trial judge did not err, under the facts of this case in requiring Mrs. Teasdel to seek employment. The law provides that earning capacity is a factor to be considered in evaluating one's entitlement to alimony. Since Mrs. Teasdel is clearly capable of providing for her needs by working, she is not in a position to allege that she does not have sufficient means for her support unless and until she avails herself of her ability to provide for her own support. Obviously, after she has done so, if she discovers that her income is such that she is unable to provide for her needs, she is free to again pursue her right to alimony.
[39] Finally, plaintiff alleges that Civil Code Article 160, as amended in 1979 should not be applied retroactively to this judgment which originally was rendered prior to its enactment. He relies upon the case of Lovell v. Lovell, 378 So.2d 418
(La. 1979). In Lovell, supra the Supreme Court of Louisiana found that Civil Code Article 160, as it existed prior to the amendment of 1979, was unconstitutional and this finding would not be given retroactive effect.
[40] The instant case is governed by Civil Code Article 160, as amended in 1979. The Lovell case, supra, and Civil Code Article 160, as it existed prior to June 29, 1979, have no application to this case. Since the judgment in this case was rendered June 3, 1983, it is apparent that it is governed by Civil Code Article 160 as it existed at that time (i.e., after the amendment of 1979).
[41] For the reasons assigned, the judgment of the district court is affirmed at appellant's cost.
[42] AFFIRMED.