573 So.2d 560 (1991)
Elizabeth Vanover DUCOTE
v.
Dale Joseph DUCOTE.
Nos. 90-CA-623, 90-CA-624.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 1991.
Harold E. Molaison, Gretna, for defendant/appellant.
Valerie Fontaine, Kenner, for plaintiff/appellee.
Before GAUDIN, DUFRESNE and WICKER, JJ.
WICKER, Judge.
Elizabeth Vanover Ducote appeals a judgment terminating her permanent alimony as of December 31, 1990. We reverse.
Mrs. Ducote and her husband, Dale Joseph Ducote, separated in 1988. A judgment dated January 9, 1989, awarded Mrs. Ducote a separation based upon Mr. Ducote's *561 abandonment; child support in the amount of $250.00 per month; and alimony pendente lite in the amount of $350.00 per month. The parties were awarded joint custody of their two-year-old son, with Mrs. Ducote denoted as the primary physical custodian. Evidence at that time indicated that Mrs. Ducote was unemployed and that she was receiving food stamps. Two months later, Mrs. Ducote was awarded $1,825.00 in arrearages because of Mr. Ducote's failure to pay support.
The divorce judgment of August 21, 1989, awarded Mrs. Ducote $250.00 per month in permanent alimony. On March 1, 1990, Mr. Ducote moved to terminate permanent alimony on the grounds that circumstances had changed: he had had a change in employment and Mrs. Ducote had become a full-time student with financial aid. Mr. Ducote also filed a petition to partition the community; but, so far as we can tell, this is still pending.
The hearing officer found that Mr. Ducote had failed to prove a change in circumstances. However, she terminated Mrs. Ducote's alimony effective December 31, 1990, giving these reasons:
Mr. Ducote has been paying Mrs. Ducote permanent alimony since August 21, 1989. Mr. Ducote has another child by a previous marriage whom he supports. He has one child from his marriage with plaintiff. Mrs. Ducote appears to be an able-bodied woman. On August 21, 1989 when the award was made, the court told Mrs. Ducote that she needed to do something to support herself in the future. The court suggested to her that six months would be a suitable period of time in which she could decide what would best suit her.
Nine months later, Mr. Ducote brought this rule for cessation of alimony. At this hearing, Mrs. Ducote testified that it would take her four to five years, taking 18 hours a semester to obtain a degree from Delgado. The court takes notice of the fact that Delgado is a community college wherein one obtains a degree in two years. If Mrs. Ducote is, in fact, taking 18 hours a semester, the court feels that a year and a half (the time from the rendition of the permanent alimony award and termination) would be ample time in which she could obtain it. The court specifically finds the change of circumstance warranting termination to be her refusal to work where earning capacity is present. Teasdel v. Teasdel, 454 So.2d 886 (La.App. 4 Cir.1984) [482 So.2d 677 (La.App. 4th Cir.1986), reversed 493 So.2d 1165 (La.1986)].
Accordingly, alimony terminates December 31, 1990 which gives Mrs. Ducote ample time in which to find a job with the degree she should have earned while taking 18 hours per semester.
Mrs. Ducote specified four errors: (1) terminating permanent alimony despite a failure of the evidence to show a change in circumstances, (2) considering as a basis for decision "an intangible philosophy of the court which views permanent alimony as available only for a rehabilitative period," (3) rendering a judgment terminating permanent alimony after specifically dismissing Mr. Ducote's motion, and (4) terminating alimony despite a lack of evidence that Mrs. Ducote refused to work when she had earning capacity.
La.C.C. art. 160 provides for alimony after divorce, so-called permanent alimony:
A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony....
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;

*562 (f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
(4) Permanent periodic alimony shall be revoked if it become unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage.
In addition, La.R.S. 9:311 mandates that support awards not be reduced "unless the party seeking the reduction ... shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award."
We find that the judge failed to consider the provisions of La.C.C. art. 160 in her ruling, specifically the mandate to consider the effect of child custody on earning capacity; the time necessary to obtain appropriate training; obligations to care for dependent children; and "all other circumstances." Mrs. Ducote's testimony, which was uncontradicted, revealed that she had last worked as a cashier at Winn-Dixie in 1987, prior to the birth of her child; that she quit working at that time because Mr. Ducote wanted her to stay home with the baby; that prior to the Winn-Dixie job, her last job was in the 1970's doing light office work but no typing; that she lived with her mother and paid a part-time baby-sitter to care for her son while she was in class; that she was still receiving food stamps to help her get by; that, since the divorce, she had had to pick up her own insurance costs of $100.00 per month; that she had been a student, with a Pell grant, at Delgado for less than a year; that she didn't know what her schedule would be the next semester or how many hours she could carry because of her responsibilities as a mother; that she wasn't sure that she would get her grant again for the next semester; that she couldn't go to summer school because grants were not available for summer school work; and that she has applied for student employment but was unable to take the available jobs because of her need to care for her son, fix supper, and study for her classes.
The evidence does not yet establish that Mrs. Ducote's circumstances have changed for the better: she has not completed her education, she still has a preschooler to care for, and she still needs food stamps to get by. The alimony she receives from Mr. Ducote certainly isn't maintaining her in such ease that she wouldn't be motivated to complete her education and get a job eventually. Furthermore, she even had to rule Mr. Ducote into court only two months after the initial award of pendente lite alimony and child support to collect arrearages.
Mrs. Ducote's situation is very unlike that of the divorced wife in the first Teasdel case, supra (1984), who was college-educated, whose children were grown, who was living with another man, who had been receiving alimony for fifteen years, and who testified that she would never seek employment unless required to. Furthermore, the Supreme Court ultimately did award Mrs. Teasdel permanent alimony, having found that her circumstances had worsened. Teasdel, supra (1986). Ballanco v. Ballanco, 538 So.2d 1100 (La.App. 5th Cir.1989), is also distinguishable on its facts: Mrs. Ballanco had both children enrolled in school, had enrolled in various courses of study without ever completing any of them, and had lived on alimony for six years without attempting to find a job. Even so, this circuit affirmed an award of continuing alimony, noting, however, that she should not have an "unreasonable time period to obtain the necessary job skills...." At 1104. And in Ware v. Ware, 461 So.2d 467 (La.App. 5th Cir.1984), Mrs. Ware had had ten years in which to find employment and the children had now all reached majority.
We don't know what course of study Mrs. Ducote has chosen, but her actions evidence an intent to better her life and that of her son. We believe that she needs *563 more time to accomplish this goal and that it would be wrong to force her out of school and into a job market for which she is still unprepared. In August of 1989, the judge suggested a six-month period in which Mrs. Ducote could decide how to earn a living. If she attends school for two years, she ought to have an associate degree by January of 1992. Obviously, circumstances could slow down her progress. When she earns her degree, or if she drops out of school without a good reason and makes no further effort in the meantime, it will be appropriate for Mr. Ducote to reopen the matter to show a change in circumstances justifying alimony termination.
We believe that the termination of Mrs. Ducote's permanent alimony as of December 31, 1990, was arbitrary and an abuse of the much discretion generally afforded the judge. We reverse the judgment terminating permanent alimony in favor of Elizabeth Vanover Ducote. Dale Joseph Ducote must pay the cost of this appeal.
REVERSED.