| iWOODARD, Judge,
dissenting.
For the reasons that follow, I respectfully dissent.
*687 Ms.- Glaude’s Voluntary Unemployment
Based on my review of the record, I see no manifest error in the trial court’s finding that Ms. Glaude is “a very conscientious person who’s seemingly trying to adjust to an involuntary situation regarding her job and her physique, and find she’s trying to make the best of a bad situation, and is presently in need of help from her past husband, Robert.” (Emphasis added.) The majority’s opinion fails to consider La.Civ.Code art. 112’s mandate to consider the effect of,child custody on earning capacity, the time necessary to obtain appropriate training, obligations to care for dependent children, and “all other circumstances.” See Ducote v. Ducote, 573 So.2d 560 (La.App. 5. Cir.1991) (trial court’s termination of permanent alimony to a wife attending community college was improper without considering the effect of child custody on her earning capacity, the time necessary to obtain appropriate training, and her obligations to care for the dependent children).
_|¿[n fact, courts have granted a person seeking alimony or continuing alimony a “reasonable” time period in order to obtain the necessary job skills. See Geter v. Geter, 404 So.2d 1283 (La.App. 2 Cir.1981) (a proper consideration in evaluating earning capacity of wife for alimony purposes is further training and education for a reasonable period of time directed toward improving earning capacity); and Fountain v. Fountain, 93-2176 (La.App. 1 Cir. 10/7/94); 644 So.2d 733 (wife could be awarded permanent alimony, but could not be given unreasonable period of time to obtain employment or pursue efforts in becoming self-supporting). Certainly, the time which has passed thus far cannot be said to constitute an unreasonable period of time for Ms. Glaude to pursue efforts in becoming self-supporting. The record establishes the following facts. Ms. Glaude enrolled in the job training course right after she was laid off, which was in September of 1995. She has only a few more months left to complete her training. She did not request permanent alimony until April of 1996. She is the mother of Mr. Glaude’s two minor children, and the skills she obtained from the Delta School of Business date back to 1979, which cannot possibly be said to adequately prepare her for work in today’s age of technology.
As ah appellate court, we should be mindful of the fact that our job is not to substitute our judgment for that of the fact finder’s. As long as the trial court’s determination is reasonable, based upon the record as a whole, we should not disturb it. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Unfortunately, the majority’s opinion does just that. A more equitable course of action would have been to affirm the trial court’s granting , of permanent alimony to Ms. Glaude. 'Mr. Glaude could then seek a termination -in his alimony obligation once Ms. Glaude graduates, or if she ceases to make progress toward her making herself more employable.
Mr. Glaude’s Ability to Pay
Although the majority does not address whether Mr. Glaude' has sufficient income with which" to pay alimony, I agree with the trial court that he was certainly’ capable of doing so.’ The trial court stated in its oral ruling that “[ajfter going’ through Mr. Glaude’s testimony regarding his expenses and income, the court finds various items of Mr. Glaude’s claim of income and expenses to be in error_” Under the “manifest error” standard, we must afford “great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone |gof voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The trial court’s credibility finding is well supported by the record. Despite claiming to have many expenses (Discover, Sears, telephone bill, Visa, etc.), Mr. Glaude was unable to produce receipts or checks to substantiate his claim that his expenses significantly reduced his net income. In addition, it is peculiar that Mr. Glaude could claim that he had insufficient means, yet he had enough money to spend $5,152.21 on Teresa Davis, whom he testified was his fiancé at the time of the 1997 trial. Mr. Glaude paid these following expenses on Davis’ behalf before judgment was rendered on the rule for permanent alimony:
*688 Check No. Date Amount Purpose
342 9-17-96 $1860.00 For a lawnmower at Sear’s; he most likely bought it for his fiancé since he has no home and although he claims to have purchased it as a way of making money, he acknowledged that no revenue was generated from the mower.
349 9-21-96 $ 229.29 Payable to Gordon’s with fiancé’s name written on the memo line.
350 9-21-96 $ 286.30 Both were payable to
351 9-21-96 $ 176.62 First Family for a debt there in his fian-cé’s name; her name was written on the memo portion of the check. Although he testified that the loan was actually for him, he could not state the reason for the loan.
367 10-24-96 $2600.00 For a sewer system to be installed in fiancé’s home.
Accordingly, I dissent from the majority’s reversal of this case and would hold that the trial court’s granting of permanent alimony to Ms. Glaude was reasonable in light of the evidence found in the record.